Sarah R. Gonski (# 032567)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

Michael J. Gottlieb (Admitted *Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, N.W.
Washington, DC  20015
Tel: (202) 237-2727
Fax: (202) 237-6131
mgottlieb@bsfllp.com

*Attorneys for Plaintiff Arizona Democratic Party*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Democratic Party,<br><br>             Plaintiff,<br><br>     v.<br><br>Arizona Republican Party, Donald J. Trump for President, Inc., Roger J. Stone, Jr., and Stop the Steal, Inc.,<br><br>             Defendants. | No. CV-16-03752-PHX-JJT<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS ROGER J. STONE JR. AND STOP THE STEAL INC.'S SUPPLEMENTAL POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER** |

Plaintiff Arizona Democratic Party submits this Reply in response to Defendant Roger J. Stone, Jr. and Stop the Steal Inc.'s (collectively, "the Stone Defendants") Response filed November 4, 2016 (Doc. 15).  As demonstrated below: (1) Plaintiff is not seeking any restraint on the Stone Defendants' right to engage in speech protected by the First Amendment; and (2) This Court has personal jurisdiction over the Stone Defendants based on their purposeful direction of their unlawful activity into the State of Arizona.

In addition, in the interests of judicial efficiency, Plaintiff respectfully addresses a few additional points in this brief rather than seeking leave to file a post-hearing

supplemental brief. First, the U.S. Court of Appeals for the Ninth Circuit just minutes ago issued an order enjoining enforcement of Arizona's ballot harvesting law. Accordingly, Defendants' sole justification for following, photographing, and interrogating voters at polling places has evaporated.

Second, Defendants' claim that their poll observing activities are limited to ballot harvesting or actions within the 75-foot buffer zone is belied by Defendant Arizona Republican Party's website—which includes an invitation for members of the general public to upload photos, videos, and other evidence of *any* illegal activity, inside or outside the buffer zone.

Third, Plaintiff takes this opportunity to address the authorities raised by counsel for Defendant Donald J. Trump For President at the conclusion of yesterday's hearing with regard to Section 11(b)'s purported intent requirement. For the reasons described below, those nonbinding authorities impermissibly conflated Voting Rights Acts Section 11(b) and 131(b), the latter of which includes an *express* specific intent requirement. In so doing, these authorities ignore the text, legislative history, and purpose of Section 11(b) of the Voting Rights Act—the entire point of which was to permit claims for voter intimidation without requiring a showing of specific intent to intimidate.

## I. ARIZONA'S BALLOT HARVESTING LAW HAS BEEN ENJOINED

Just minutes before submitting this brief, the en banc Ninth Circuit enjoined enforcement of H.B. 2023, the so-called "ballot harvesting law" for the 2016 general election pending a ruling on its constitutionality. *See* Declaration of Sarah R. Gonski ("Gonski Decl.") at Ex. 4. At minimum, this Court should order Defendants to immediately cease all efforts to enforce H.B. 2023 and direct them to issue clear and immediate guidance unequivocally directing their supporters and pollworkers to do the same.

## II. THE ARIZONA REPUBLICAN PARTY HAS CALLED ON THE GENERAL PUBLIC TO PHOTOGRAPH AND VIDEOTAPE "ANYTHING IMPROPER OR ILLEGAL" AT POLLING PLACES

At yesterday's hearing, counsel for Defendants repeatedly emphasized that Defendant Arizona Republican Party ("ARP") is not responsible for any activities occurring outside the 75-foot buffer zone established by Arizona law, and therefore any injunction against it as to activities outside the zone would be ineffective. But the ARP's focus on the activities of official, credentialed poll workers misses the mark; it ignores the fact that ARP appears to recruit "poll watchers" from the general public, without mentioning credentialing or training requirements. Indeed, ARP's website exhorts members of the general public that "observe anything improper or illegal at the polls on Election Day" to fill out an online "AZGOP Poll Observer Incident Report" to report the incident to ARP. Gonski Decl. at Ex. 3. On this form, members of the public are encouraged to upload photos or videos corroborating the incident. *Id.* ("Submit any photos, videos, or other materials or evidence. Thank you for your service to ensure the integrity of elections in Arizona!"). The website does not clarify that taking photos and videos within the 75-foot buffer zone is proscribed by Arizona law; does not provide any guidance as to how to collect such evidence in a non-threatening or intimidating manner; is not restricted to certified and trained poll observers; and does not state that the allegedly "illegal" activity members of the public should document is limited to ballot harvesting. In fact, ARP does not include *any* guidelines for the proper behavior when seeking to document allegedly illegal activity occurring at the polls.

As this website demonstrates, an injunction restraining the ARP would be effective in restraining voter intimidation that is likely to occur at polling places in Arizona on Election Day without this Court's intervention.

**III. THIS COURT HAS PERSONAL JURISDICTION OVER THE STONE DEFENDANTS**

While not addressed in the Stone Defendants' brief, Plaintiff addresses this Court's jurisdiction over Stone and Stop the Steal in accordance with undersigned counsel's understanding of the Court's instruction at yesterday's hearing.

Where, as here, there is no applicable federal statute governing personal

jurisdiction, the district court must apply the law of the forum state, here Arizona. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). Because Arizona's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *See id.*; *see also* Ariz. R. Civ. P. 4.2(a) ("A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States."). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For minimum contacts to be present:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127 (9th Cir. 1995).

Each of these elements is plainly satisfied here with respect to the Stone Defendants. As described in the Complaint, Stone is recruiting Trump supporters through his super PAC Stop the Steal, which runs a website actively signing up Trump supporters to "volunteer" to fight "voter fraud." Compl. ¶ 34. The stated purpose of Stop the Steal is to prevent Secretary Clinton from "rigging" the election through "flood[ing] the polls with illegals" in "[l]iberal enclaves." Doc.11 at Ex. 5 (Stop the Steal home page). To combat such imagined activity, the Stone Defendants are recruiting volunteers in key battleground

states like Arizona to engage in sham "exit polling" operation designed to discourage individuals in majority-minority communities such as Phoenix from voting. *Id.* ¶¶ 35-36; *see* Expert Report and Declaration of Mark S. Mellman at 7 ("Exit polls are conducted to project the outcome of an election as accurately as possible, not to prevent fraud."); *id.* at 1 ("Given Mr. Stone's stated political biases and the methodology he has employed—i.e., targeting Democratic and minority precincts—his exit polling strategy appears only designed to intimidate voters in an attempt to influence the election and suppress the vote.").

The Stone Defendants have purposefully directed their sham exit polling activities at Arizona. *Dole Food,* 303 F.3d at 1111 ("a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis"). As of the morning of November 4, 2016, the Stop the Steal website stated that 124 "exit pollers" had volunteered to monitor polling sites in Arizona—which was "110.2%" of the "goal" that Stone and Stop the Steal had established for the State. *See* Gonski Decl. at Ex. 1. And as a reflection of the scientific robustness of the exit polling operation, Stop the Steal's Arizona exit pollers reported that 92.3% of surveyed voters cast a ballot for Donald Trump. *Id.*; *compare* Mellman Decl. at 4-6 (describing the many technical deficiencies in the Stone Defendants' exit polling operation).

Plaintiff's claims against the Stone Defendants arise directly out of their forum state activities. Specifically, Plaintiff alleges that Stone and Stop the Steal's recruitment of Trump supporters to act as "exit pollers" is a thinly veiled effort to intimidate voters in Democratic-leaning and majority minority communities, in violation of Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), and the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3). *See* Plaintiff's TRO Brief at 14 ("Defendants Stone and Stop the Steal, Inc. have . . . adopted the objective [of preventing lawful voting through intimidation] and have taken concrete steps to advance it, including organizing an 'exit polling' operation targeted at minority voters in locations including Phoenix, and recruiting 'vote protectors' to patrol polling places where they believe voters are likely to vote for Secretary

Clinton."). Given the Stone Defendant's explicit targeting of Arizona for their sham "exit polling" operation, which is likely to result in harm to Arizona voters, this Court's exercise of jurisdiction would be eminently reasonable. *Dole*, 303 F.3d at 114 ("Once it has been decided that a defendant purposefully established minimum contacts with a forum, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction."). The Stone Defendants point to no "compelling" reason why this Court should decline jurisdiction over claims arising out of their purposeful efforts to interfere with the right of Arizona voters to exercise the franchise in the upcoming election.

### IV. ASSERTION OF JURISDICTION OVER STOP THE STEAL PERMITS INJUNCTIVE RELIEF TO ISSUE AGAINST STONE

Under Rule 65(d) of the Federal Rules of Civil Procedure, an order of injunctive relief binds "the parties" to the order, "[t]he parties' officers, agents, servants, employees, and attorneys," and any "other persons who are in active concert or participation with anyone described." Accordingly, even if this Court concludes that it lacks jurisdiction over Stone or that service was not properly effected against him, it plainly has authority issue restrain his conduct be virtue of his relationship with Stop the Steal. The Complaint expressly alleges that Stop the Steal is Stone's operation in conception, design and execution. Compl. ¶¶ 9, 34. Stone has represented to the public that Stop the Steal is under his control. *See* Gonski Decl. Ex. 2 (Stone speaking to media interviewer: "please go to stopthesteal.org, and sign up as a volunteer to work on election day. **We're** trying to cover 7,000 specific precincts in the swing states. . . . So **we** need your elbow grease, **we** need your boots on the ground, **we** need your shoe leather to help us. **We** will train you, **we** will help you, **we** will assign you . . . .") (emphases added). Absent discovery, it is impossible for Plaintiff to determine the precise legal relationship between Stone and Stop the Steal. But the unrebutted evidence establishes, at minimum, that Stone is an "officer[], agent[], servant[], [or] employee[]" of Stop the Steal, and therefore is bound by the terms of any injunction issued against it.

## V. SPECIFIC INTENT IS NOT REQUIRED TO PROVE A VIOLATION OF SECTION 11(b)

At the close of yesterday's hearing, Counsel for Defendant Donald J. Trump For America Inc. orally submitted case citations purportedly establishing that specific intent is required to prove a violation of Section 11(b) of the Voting Rights Act. In the interests of efficiency and out of respect for the Court's time, Plaintiff respectfully addresses these authorities in this brief rather than seeking leave to file a separate supplemental brief. The first case Defendant cited was the Ninth Circuit's vacated decision in *Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985). As an initial matter, *Olagues* is not binding precedent because it was vacated as moot by the Supreme Court. *See* 474 U.S. 806 (1987) ("The judgment is vacated and the case is remanded to the United States Court of Appeals for the Ninth Circuit with instructions that the United States District Court for the Northern District of California dismiss the action as moot."). As the Ninth Circuit has expressly held, its judgments are "not binding precedent" where "the Supreme Court ultimately vacated it" on grounds that the federal courts no longer have jurisdiction over the matter. *Roe v. Anderson*, 134 F.3d 1400, 1404 (9th Cir. 1998) (prior decision not binding precedent where Supreme Court vacated judgment on ripeness grounds). Accordingly, *Olagues* is at most entitled to "persuasive authority." *Id.* And *Olagues* fails to persuade. In particular, the case's discussion of Section 11(b)'s intent requirement came only after the Court held that the plaintiffs' claims were invalid on separate and independent grounds—and therefore was dicta. 770 F.2d at 804.

More fundamentally, the Court's analysis failed to distinguish between claims for voter intimidation under Section 11(b) and Section 131(b) of the Voting Rights Act, the latter of which has an explicit intent requirement.[1] *Id.* (describing a supposed "two-

---

[1] Section 131(b) provides:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person ***for the purpose of interfering with the right of such other person to vote*** or to vote as he may choose . . .

52 U.S.C. § 10101(b) (formerly cited as 42 USCA § 1971).

-7-

pronged test for violations of 42 U.S.C. §§ 1971(b) [Section 131(b)] and 1973i(b) [Section 11(b)]: the voters and organizations were intimidated, but the officials did not intend to intimidate. *See United States v. McLeod*, 385 F.2d 734, 740–41 (5th Cir. 1967)"). The sole authority the *Olagues* court cited in support for this position, *McLeod*, only addressed a claim under Section 131(b)—which expressly includes a requirement of specific intent to intimidate voters. *Id.* at 739-40.

As described in Plaintiff's TRO Reply Brief, Section 11(b) was enacted by Congress precisely to displace Section 131(b)'s requirement to show specific intent to demonstrate voter intimidation. *See* H.R. Rep. No. 89-439, at 30 (1965) (noting that for Section 11(b) claims, unlike Section 131(b), "no subjective purpose or intent need be shown"), *as reprinted in* 1965 U.S.C.C.A.N. 2462. As Attorney General Nicholas Katzenbach testified during hearings on the Voting Rights Act: "Perhaps the most serious inadequacy [of Section 131(b)] results from the practice of district courts to require the Government to carry a very onerous burden of proof of 'purpose.' Since many types of intimidation . . . involve subtle forms of pressure, this treatment of the purpose requirement has rendered the statute largely ineffective." Voting Rights: Hearings on H.R. 6400 Before the Subcomm. No. 5 of the H. Comm. On the Judiciary, 89th Cong. 9 (1965). As a result, Katzenbach concluded, "defendants [sh]ould be deemed to intend the natural consequences of their acts" for purposes of Section 11(b). Voting Rights, Part 1: Hearings on S. 1564 Before the S. Comm on the Judiciary,  89th Cong. 16 (1965).

Neither the Ninth Circuit in *Olagues*, nor the two district courts that followed its reasoning, [2] considered the textual differences between Sections 11(b) and 131(b) of the

---

By contrast, Section 11(b) provides:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote . . . .

52 U.S.C.A. § 10307 (formerly cited as 42 USCA §  1973i).
[2] *See Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016); *Willingham v. County of Albany*, No. 04-cv-369 (DRH), 2005 WL 1660114 (N.D.N.Y. July 12, 2005).

Voting Rights Act, or the legislative history of Section 11(b).  And the sole case on which *Olagues* relied, *McLeod*, did not even have occasion to address these issues because it did not involve a Section 11(b) claim.  For these reasons, Plaintiff respectfully submits that *Olagues* lacks persuasive authority and should not be relied upon by this Court.

### VI.  PLAINTIFF DOES NOT SEEK TO RESTRAIN THE STONE DEFENDANTS' SPEECH RIGHTS

In their response, the Stone Defendants erroneously claim that Plaintiff is attempting to impose a "prior restraint" on their protected political speech.  The Ninth Circuit has squarely held that speech constituting voter intimidation is—by definition—not protected by the First Amendment.  *See United States v. Nguyen*, 673 F.3d 1259, 1261 (9th Cir. 2012) (voter intimidation conveyed through speech "may be regulated by the state without running afoul of the First Amendment. . . .  If the targeted distribution of the letter by Nguyen's campaign falls within this prohibition, then it is speech that is proscribable under the First Amendment.").  In no respect does Plaintiff seek to restrain Stone or his organization from engaging in political speech in favor of Trump or critical of Secretary Clinton.  Nor does Plaintiff request this Court restrain the Stone Defendants from publicly questioning the legitimacy of the election, or asserting that Secretary Clinton will "steal" it.  What Plaintiff seeks is to restrain Stone and his followers from engaging in direct, in-person voter intimidation in and around polling places in Arizona, under the guise of sham "exit polling" or "citizen journalist" operations.  *See* Doc. 10 Ex. 2 (Proposed Order) at 2.

Further, the Stone Defendants are mistaken that they can slap the label "exit polling" on a coordinated voter intimidation scheme and thereby enjoy the protections of the First Amendment.  *See* Doc. 27 at 3.  The Stone Defendants do not even attempt to demonstrate that their so-called "exit polling" meets that definition—i.e., "a gathering of data from a random sample of voters at polling places on election day" by, "in a scientifically pre-determined pattern asks emerging voters to fill out a short questionnaire." *ABC v. Blackwell*, 479 F. Supp. 2d 719 (S.D. Oh. 2006).  Incredibly, the

Stone Defendants all but acknowledge that their Election Day effort "isn't . . . scientific." *See* Doc. 27 at 3 (Stop the steal isn't required to be scientific in its exit poll."). The First Amendment does not protect voter intimidation—whatever its self-serving label.

### VII. THE STONE DEFENDANTS' EVIDENTIARY CHALLENGES ARE WITHOUT MERIT AT THE PRELIMINARY INJUNCTION STAGE

At yesterday's hearing and again in today's response brief, the Stone Defendants claim there is no hard "evidence" that Stone and his followers intend to engage in voter intimidation on Election Day. In so doing, the Stone Defendants appear to rely on authentication and admissibility challenges to the voluminous exhibits to Plaintiff's Motion for a Temporary Restraining Order, which if credited demonstrate a clear and calculated conspiracy to intimidate voters in majority-minority and Democratic-leaning communities in Arizona and elsewhere. *See* Doc. 11 Exs 1-29. The Stone Defendants' evidentiary objections are misplaced. "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *see Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 n. 5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits").

### VIII. CONCLUSION

The Court should grant Plaintiff's motion for a temporary restraining order and/or preliminary injunction.

Respectfully submitted,

Dated: November 4, 2016      s/ *Michael J. Gottlieb*

Michael J. Gottlieb
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-61341
MGottlieb@bsfllp.com

Sarah R. Gonski (# 032567)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 351-7000
SGonski@perkinscoie.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and a Notice of Electronic Filing was transmitted to counsel of record.

*s/ Sarah R. Gonski*