# EXHIBIT 4

(1 of 115)

Case 2:16-cv-03752-JJT Document 28-5 Filed 11/04/16 Page 2 of 10
Case: 16-16698, 11/04/2016, ID: 10186980, DktEntry: 76-1, Page 1 of 9

**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

NOV 04 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LESLIE FELDMAN; LUZ MAGALLANES; MERCEDEZ HYMES; JULIO MORERA; CLEO OVALLE; PETERSON ZAH, Former Chairman and First President of the Navajo Nation; THE DEMOCRATIC NATIONAL COMMITTEE; DSCC, AKA Democratic Senatorial Campaign Committee; THE ARIZONA DEMOCRATIC PARTY; KIRKPATRICK FOR U.S. SENATE; HILLARY FOR AMERICA, Plaintiffs-Appellants, BERNIE 2016, INC., Intervenor-Plaintiff-Appellant, v. ARIZONA SECRETARY OF STATE'S OFFICE; MICHELE REAGAN, in her official capacity as Secretary of State of Arizona; MARICOPA COUNTY BOARD OF SUPERVISORS; DENNY BARNEY; STEVE CHUCRI; ANDY KUNASEK; CLINT HICKMAN; STEVE GALLARDO, member of the Maricopa County Board of Supervisors, in their official capacities; MARICOPA COUNTY RECORDER AND ELECTIONS DEPARTMENT; HELEN | No. 16-16698 D.C. No. 2:16-cv-01065-DLR District of Arizona, Phoenix ORDER |

(2 of 115)

Case: 2:16-cv-03752-JJT Document 28-5 Filed 11/04/16 Page 3 of 10
Case: 16-16698, 11/04/2016, ID: 10186980, DktEntry: 70-1, Page 2 of 9

**PURCELL**, in her official capacity as Maricopa County Recorder; **KAREN OSBORNE**, in her official capacity as Maricopa County Elections Director; **MARK BRNOVICH**, in his official capacity as Arizona Attorney General,

    Defendants-Appellees,

**THE ARIZONA REPUBLICAN PARTY**,

    Intervenor-Defendant-Appellee.

**BEFORE:** THOMAS, Chief Judge and O'SCANNLAIN, W. FLETCHER, RAWLINSON, CLIFTON, BYBEE, CALLAHAN, N. R. SMITH, MURGUIA, WATFORD, and OWENS, Circuit Judges.

**THOMAS**, Chief Judge:

    We granted, in a prior order, rehearing *en banc* in this appeal. In a separate order, filed concurrently with this opinion, we scheduled *en banc* oral argument for the week of January 17, 2017, in San Francisco, California. The question, then, is whether to grant plaintiffs' motion for an injunction pending appeal. A motions panel denied the motion in the first instance, but we may reconsider that decision as an *en banc* court. For the reasons stated herein, we grant the motion.

    The standard for evaluating a stay pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction. *Lopez v.*

2

(3 of 115)

Case: 2:16-cv-03752-JJT Document 28-5 Filed 11/04/16 Page 4 of 10
Case: 16-16658, 11/04/2016, ID: 10186580, DktEntry: 76-1, Page 3 of 9

*Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983); *see also Southeast Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) (order) (discussing injunctions pending appeal). Therefore, we grant the motion for a preliminary injunction pending appeal essentially for the reasons provided in the dissent in *Feldman v. Arizona Sec'y of State*, __ F.3d __, 2016 WL 6427146, at *21–31 (9th Cir. 2016), a copy of which is attached (along with a copy of the majority opinion).

However, there are additional considerations when we consider granting an injunction pending appeal in an election case. When faced with an appeal in cases in which an election is pending, federal courts are "required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). And we do not "lightly interfere with . . . a state election." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc).

At the outset, it is important to remember that the Supreme Court in *Purcell* did not set forth a *per se* prohibition against enjoining voting laws on the eve of an election. 549 U.S. at 4; *see also Veasey v. Perry*, 135 S. Ct. 9, 10 (2014) (Ginsburg, J., dissenting) ("*Purcell* held only that courts must take careful account

3

(4 of 115)

Case 2:16-cv-03752-JJT Document 28-5 Filed 11/04/16 Page 5 of 10
Case: 16-16698, 11/04/2016, ID: 10186980, DktEntry: 70-1, Page 4 of 9

of considerations specific to election cases, not that election cases are exempt from traditional stay standards."). Rather, courts must assess the particular circumstances of each case in light of the concerns expressed by the *Purcell* court to determine whether an injunction is proper.

In this case, the factors that animated the Supreme Court's concern in *Purcell* are not present. First, the injunction does not affect the state's election processes or machinery. The injunction pending appeal sought by plaintiffs would not change the electoral process, it simply would enjoin enforcement of a legislative act that would criminalize the collection, by persons other than the voter, of legitimately cast ballots.

H.B. 2023 amended Arizona's election statutes to provide that "A person who knowingly collects voted or unvoted early ballots from another person is guilty of a class 6 felony." Ariz. Rev. Stat. § 16-1005(H). Enjoining enforcement of H.B. 2023 will not have any effect on voters themselves, on the conduct of election officials at the polls, or on the counting of ballots. Under H.B. 2023, as the State agrees, legitimate ballots collected by third parties are accepted and counted, and there are no criminal penalties to the voter. So, under H.B. 2023, if a ballot collector were to bring legitimate ballots to a voting center, the votes would be counted, but the collector would be charged with a felony. Thus, the only effect

4

(5 of 115)

Case 2:16-cv-03752-JJT Document 28-5 Filed 11/04/16 Page 6 of 10
Case: 16-16698, 11/04/2016, ID: 10186980, DktEntry: 70-1, Page 5 of 9

of H.B. 2023, although it is serious, is to make the collection of legitimate ballots by third parties a felony. So, unlike the circumstances involved in *Purcell* or *Southwest Voter*, the injunction at issue here does not involve any change at all to the actual election process. That process will continue unaltered, regardless of the outcome of this litigation. The only effect is on third party ballot collectors, whose efforts to collect legitimate ballots will not be criminalized, pending our review. No one else in the electoral process is affected. And no electoral process is affected.

In contrast, the voter-ID law at issue in *Purcell* changed who was eligible to vote and directly told election officials to turn people away if they lacked the proper proof of citizenship. That circumstance is far different from the case at bar where, as the district court pointed out, the law "does not eliminate or restrict any method of voting, it merely limits who may possess, and therefore return, a voter's early ballot." *Feldman v. Arizona Sec'y of State*, __ F. Supp. 3d __, 2016 WL 5441180 at *9 (D. Ariz. 2016). Thus, in our case, in contrast to *Purcell*, an injunction will not confuse election officials or deter people from going to the polls for fear that they lack the requisite documentation. The election process is unaffected.

5

(6 of 115)

Case 2:16-cv-03752-JJT Document 28-5 Filed 11/04/16 Page 7 of 10
Case: 16-16698, 11/04/2016, ID: 10186980, DktEntry: 70-1, Page 6 of 9

Second, none of the cases that caution against federal court involvement in elections involved a statute that newly criminalizes activity associated with voting. This law is unique in that regard.

Third, the concern in *Purcell* and *Southwest Voter* was that a federal court injunction would disrupt long standing state procedures. Here, the injunction preserves the *status quo* prior to the recent legislative action in H.B. 2023. Every other election cycle in Arizona has permitted the collection of legitimate ballots by third parties to election officials. So, the injunction in this case does not involve any disruption to Arizona's long standing election procedures. To the contrary, it restores the *status quo ante* to the disruption created by the Arizona legislature that is affecting this election cycle for the first time.

Fourth, unlike the circumstances in *Purcell* and other cases, plaintiffs did not delay in bringing this action. This action was filed less than six weeks after the passage of the legislation, and plaintiffs have pursued expedited consideration of their claims at every stage of the litigation, both before the district court and ours. Indeed, it was the State that opposed an expedited hearing and briefing schedule at every turn, not the plaintiffs.

Fifth, *Purcell* was decided prior to the Supreme Court's opinion in *Shelby Cty. Ala. v. Holder*, __ U.S. __, 133 S. Ct. 2612 (2013), which declared

(7 of 115)

Case 2:16-cv-03752-JJT Document 28-5 Filed 11/04/16 Page 8 of 10
Case: 16-16698, 11/04/2016, ID: 10186980, DktEntry: 70-1, Page 7 of 9

unconstitutional the Voting Rights Act's coverage formula, and effectively invalidated preclearance requirements under § 5 of the Act. In short, *Purcell* was decided when the preclearance regime under § 5 of the Voting Rights Act was still intact, and Arizona was a covered jurisdiction. The Court in *Purcell* emphasized that the challenged law had already passed the then-effective § 5 preclearance requirements of the United States Department of Justice. As a result, there was a prima facie reason to believe that the challenged statute was not discriminatory, alleviating the concern that the law violated voting rights. *Purcell*, 549 U.S. at 3. That same reassurance is absent here.

 Indeed, this case presents precisely the opposite concern. In 2012, Arizona submitted a previous iteration of H.B. 2023 for preclearance. The Department of Justice expressed concern and refused to preclear the bill, S.B. 1412, without more information about its impact on minority voters. Rather than address this concern, Arizona withdrew S.B. 1412 from preclearance and repealed it the following session. Now, unhindered by the obstacle of preclearance, Arizona has again enacted this law—a mere seven months before the general election—with nothing standing in its way except this court. Thus, not only are the preclearance protections considered important in *Purcell* absent in this case, but it is quite

doubtful that the Justice Department would have granted preclearance. In the wake of *Shelby County*, the judiciary provides the only meaningful review of legislation that may violate the Voting Rights Act.[1]

Sixth, unlike the situation in *Purcell*, we have, as a court, given careful and thorough consideration to these issues. *Purcell* involved a barebones order issued by a two judge motion panel, which did not contain a reasoned decision. As the Court described in *Purcell*, "[t]here has been no explanation given by the Court of Appeals showing the ruling and findings of the District Court to be incorrect." 549 U.S. at 5. Here, a three judge merits panel has held oral argument and issued a detailed, reasoned decision and dissent. Our *en banc* court has also considered these issues and reached a decision essentially for the reasons set forth in the dissent. This is not a case in which our court has issued a stay without a detailed consideration and resolution of the issues.

---

[1] Meaningful review of H.B. 2023 is especially important because, as I observed in my dissent, the sponsors of H.B. 2023 could not identify a single example of voter fraud in Arizona caused by ballot collection, nor is there one to be found anywhere in the voluminous record before us. Judge Bybee cites to a 2005 report from the bi-partisan Commission on Federal Election Reform, which recommends that states should reduce the risks of fraud and abuse in absentee voting by prohibiting "third-party" organizations from handling absentee ballots. Dissent at 2. However, the Commission's recommendation was issued before the Supreme Court invalidated the § 5 preclearance requirement; since that time, the voting rights landscape has changed considerably, requiring courts to exercise more vigilance as the primary bulwarks against voter suppression.

In short, the injunction applies to the operation of a statute that would impose felony sanctions on third parties for previously legal action in connection with elections when, as everyone concedes, the statute has no impact on the election process itself. We are preserving the *status quo* for this election, and we will consider the challenge to the new legislation at our *en banc* hearing in the next few months.

**IT IS SO ORDERED**.